UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LASHAWN JONES,**<br><br>Plaintiff,<br><br>v.<br><br>**NEW JERSEY DEPARTMENT OF CORRECTIONS,** *et al.*,<br><br>Defendants. | No. 2:18-cv-17296 (ES) (SDA)<br><br>Hon. Stacey D. Adams<br><br>**OPINION**<br><br>August 26, 2025 |

This matter comes before the Court on the motion of *pro se* Plaintiff Lashawn Jones ("Plaintiff") for the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). (ECF No. 194). The Court received no opposition to the motion. This matter is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Plaintiff's motion is **DENIED**.

## BACKGROUND AND RELEVANT PROCEDURAL HISTORY[1]

Plaintiff initiated this civil rights action pursuant to 42 U.S.C. § 1983 on December 14, 2018. (ECF No. 1). Plaintiff contends that Defendants Senior Correctional Officer ("SCO") Chaves, Hearing Officer DiBenedetto, Nurse Manager Cathy, SCO Samantha Doffont, S. Grant,

---

[1] The procedural history of this matter is extensive. Because the Court writes predominantly for the parties, the background will be abbreviated, elaborating only where necessary for resolution of the instant motion. The factual recitals are gleaned from Plaintiff's Second Amended Complaint filed on May 10, 2022 (ECF No. 49), which is the current operative complaint. Plaintiff attempted to file an additional amended complaint on April 10, 2023. (ECF No. 100). However, that complaint is not the operative complaint because Defendant did not consent to the amendment and Plaintiff failed to file a motion for leave to amend the complaint. (*Id.*). Plaintiff then filed a Motion for Leave to Amend at ECF No. 198, which was denied at ECF No. 209. Thus, the Second Amended Complaint remains the operative complaint.

1

Major Jones, Commissioner Victoria Khun, Dr. Mayo, Administrator Patricia McGill, Administrator Patrick Nogan, K. Yaindl, the New Jersey Department of Corrections ("NJDOC"), the Northern State Prison Medical Department, and University Correction Health Care (collectively, "Defendants")[2] violated Plaintiff's civil rights while he was incarcerated in two New Jersey State Prisons: East Jersey State Prison and Northern State Prison. (*Id.* ¶¶ 9-10). More specifically, Plaintiff alleges that Chaves and "several other" officers assaulted him while he was incarcerated in East Jersey State Prison. (*Id.* ¶ 9). Plaintiff further alleges that when he was transferred to Northern State Prison, he experienced unconstitutional conditions of confinement, including the withholding of his mail and the denial of prompt medical attention. (*Id.* ¶ 10).

In conjunction with filing his initial complaint, Plaintiff filed an application to proceed *in forma pauperis* ("IFP application") on December 14, 2018. (ECF No. 1). The Honorable Esther Salas, U.S.D.J., denied that application on January 14, 2019 because Plaintiff failed to provide a full affidavit of poverty. (ECF No. 2). Plaintiff thereafter completed a second IFP application on February 1, 2019. (ECF No. 3). The record reflects that a previous lawsuit filed by Plaintiff at Docket No. 17-CV-03685 (ES) (JAD) was consolidated into this matter on June 18, 2019. (ECF No. 8). Because the filing fee in the prior action had been paid by the Defendants upon their removal to Federal Court (Docket No. 17-CV-03685, ECF No. 1), Plaintiff was not required to pay the filing fee in the instant matter and the Court took no further action on his second IFP application.

Plaintiff has previously file eight motions for the appointment of pro bono counsel. (ECF Nos. 6, 26, 28, 41, 47, 50, 99, 116). The Court denied the first four motions because Plaintiff

---

[2] Of these Defendants, only the NJDOC has been served.

wholly failed to address whether appointment of pro bono counsel was warranted according to the framework established in *Tabron v. Grace*, 6 F.3d 147, 153-57 (3d Cir. 1993). (ECF Nos. 11, 29, 39, 44). Plaintiff's next four motions, filed on May 9, 2022, May 10, 2022, April 10, 2023, and June 9, 2023, addressed the *Tabron* factors but were nevertheless denied because, applying those factors, the Court repeatedly found that Plaintiff failed to establish that the appointment of pro bono counsel was warranted. (ECF Nos. 53, 54, 134, 135). Plaintiff filed the instant application on February 4, 2025. (ECF No. 194).[3]

## LEGAL ANALYSIS

In civil actions, court appointment of pro bono counsel is neither a constitutional nor a statutory right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). Indeed, the right to pro bono counsel in civil cases is far from absolute. Rather, "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Montgomery v. Pinchack*, 294 F.3d 492, 499 (3d Cir. 2002). Still, district courts have broad discretion to appoint counsel for those unable to afford it pursuant to 28 U.S.C. § 1915(e). *Id.* at 498 (citing *Tabron*, 6 F.3d at 153); *Washington v. Ellis*, No. 17-CV-7243 (PGS) (TJB), 2020 WL 6423595, at *2 (D.N.J. Nov. 2, 2020). This decision must be made on a case-by-case basis. *Abuiz v. Brennan*, 443 F. App'x 703, 707 (3d Cir. 2011) (quoting *Tabron*, 6 F.3d at 157-58).

---

[3] Plaintiff states that the instant motion is a re-filing of the motion that Judge Hammer "put [] on hold" when he sent the case to mediation. (ECF No. 194 at 4). Judge Hammer administratively terminated this matter on March 30, 2023 when it was referred to mediation (ECF No. 95), and terminated Plaintiff's April 10, 2023 motion for pro bono counsel (ECF No. 99), however, Judge Hammer addressed this motion, and its renewed application at ECF No. 116 in his Order and Opinion on August 16, 2023 (ECF Nos. 134-35).

As a threshold issue, courts must determine whether a plaintiff's case has "some merit in fact or law." *Montgomery*, 294 F.3d at 499. If it does, the court must then weigh the following six factors, as enumerated in *Tabron*, to determine whether a pro se plaintiff is eligible to receive pro bono counsel:

> (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations, and; (6) whether the case will require testimony from expert witnesses.

*Id.* (citing *Tabron*, 6 F.3d at 155-57).

For purposes of Plaintiff's current motion, the Court will once again assume, as it did in its June 13, 2022 and August 16, 2023 Opinions, that Plaintiff's claims have some merit in fact and law. (ECF No. 53 at 3; ECF No. 134 at 4). Despite this assumption, after considering the six *Tabron* factors, the Court again concludes that the appointment of pro bono counsel for Plaintiff is not warranted and therefore denies Plaintiff's motion.

The Court begins by considering the first *Tabron* factor: the ability of a plaintiff to present his or her own case. *Montgomery*, 294 F.3d at 499. On this factor, courts generally consider the movant's "education, literacy, prior work experience, prior litigation experience, . . . ability to understand English, and the [] restraints due to confinement." *Woodham v. Sayre Borough Police Dep't*, 191 F. App'x 111, 114 (3d Cir. 2006) (citing *Montgomery*, 294 F.3d at 501). Courts also consider the extent of a plaintiff's "access to necessary resources like a typewriter, photocopier, telephone, and computer." *Parham*, 126 F.3d at 459; *see also Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992) (finding the extent of a prisoner's access to a law library and other legal materials relevant to plaintiff's ability to present his own case).

4

Here, Plaintiff states that he is unable to effectively present his case for three principal reasons. First, Plaintiff contends that he lacks the formal legal education and training needed to properly present his case. (ECF No. 194 at 6). Plaintiff previously argued that his G.E.D.-level of education left him without the skills necessary to prepare and file motions and briefs, conduct oral argument, cross-examine witnesses, or familiarize himself with court procedure. (ECF No. 116 at 6). He now adds that his continued failure to have any of his motions granted highlights his ineptitude to try the matter. (ECF No. 194 at 6). Second, Plaintiff argues that he lacks meaningful access to the law library at his prison and faces a variety of interference from prison staff in accessing these resources in retaliation for filing his claims. (*Id.* at 6-7).[4] In raising this issue, Plaintiff notes that his family has been conducting legal research on his behalf outside of the prison. (*Id.* at 6). Third, Plaintiff states that staff within the facility he resided interfered with his handling of this case, including searching his cell and taking legal documents. (*Id.* at 7).

The Court finds that Plaintiff is capable of effectively litigating this matter. Plaintiff himself has previously conceded that "[he] is not illiterate and is reasonably capable of presenting some claims[.]" (ECF No. 116 at 6). Further to the point, Plaintiff has litigated this matter for almost seven years. Throughout this time, Plaintiff has "cogently explain[ed] the facts underlying [his] claims, as well as the basis for his requested relief." (ECF No. 134 at 5 (quoting ECF No. 53 at 4)). He has consistently demonstrated the ability to pursue his case by filing amended pleadings, appearing for scheduled telephone status conferences, and submitting letters to the Court regarding discovery disputes, among other filings. (*See, e.g.*, ECF No. 49, ECF No. 51). Despite his lack of

---

[4] Plaintiff also claims that he does not have access to the law library due to COVID-19. (*Id.* at 7). The Court assumes this is recycled from an earlier motion from a time when COVID-19 related restrictions were in place. The pandemic ended several years ago, and the Court assumes this no longer presents a barrier to Plaintiff.

formal legal education, it appears that Plaintiff has familiarity with, and understanding of, the litigation tools available to him. *Montgomery*, 294 F.3d at 501 (finding that a plaintiff's ability to file and respond to motions indicates that the plaintiff "has some legal knowledge and is literate") (citing *Parham*, 126 F.3d at 459). Finally, while Plaintiff's limited access to the law library makes legal research more challenging, Plaintiff has previously acknowledged that he is still capable of researching cases, taking notes, and writing motions, even if by hand. (*See, e.g.*, ECF No. 116; ECF No. 99-1). Further, in his moving papers he admitted he has the assistance of family members outside of the prison. As to Plaintiff's missing files and claims of interference, the Court has directed the Clerk of Court to mail Plaintiff a copy of the current operative complaint and Defendant was directed to send another copy of its document production originally served on May 1, 2025. (ECF No. 208). In sum, while Plaintiff's arguments demonstrate that presenting his legal case may be laborious, they do not demonstrate that he is incapable of advancing them. Thus, the first *Tabron* factor weighs against the appointment of pro bono counsel.

The Court next weighs the second *Tabron* factor, the complexity of Plaintiff's case. *Montgomery*, 294 F.3d at 499. In assessing this factor, courts consider the complexity not only of the ultimate issue of the case, but of the proof and discovery that issue entails. *Parham*, 126 F.3d at 459. The Third Circuit has held that § 1983 conditions-of-confinement claims are not inherently complex. *Montgomery*, 294 F.3d at 502. Here, the Court has already concluded on eight prior occasions that the issues raised in this case were not complex enough to warrant the appointment of pro bono counsel. (ECF Nos. 11, 29, 39, 44, 53, 54, 134, 135). Nothing has changed since that time. Plaintiff has presented no new evidence to demonstrate that the case is too complex for him to proceed pro se. Indeed, Plaintiff does not provide any support for his contention that his claims "will present complex issues," besides reiterating that he is an incarcerated pro se litigant who

lacks formal legal schooling and training, and summarily declaring that his case is complex. (ECF No 194 at 9). Accordingly, the second *Tabron* factor also weighs against granting Plaintiff's motion.

The Court next considers the degree to which a factual investigation will be necessary and the ability of the plaintiff to pursue that investigation. *Montgomery*, 294 F.3d at 499. "[I]n weighing a request from an indigent civil litigant for appointment of counsel, courts should consider a prisoner's ability to gather facts relevant to the proof of his claim." *Id.* at 503. Moreover, "[c]ourts should further consider that 'it may be difficult for indigent plaintiffs to understand the complex discovery rules' in investigating their claims." *Id.* Here, the Court finds, as it has previously, that some factual investigation will be necessary as to Plaintiff's § 1983 excessive force and conditions-of-confinement claims. (ECF No. 134 at 7; ECF No. 53 at 5). However, Plaintiff has demonstrated that he is able to pursue this factual investigation. For example, Plaintiff has filed discovery requests and motions to compel for discovery he still seeks. (ECF Nos. 40, 51 (requesting that Defendants produce various items pursuant to Fed. R. Civ. P. 34); ECF No. 81 (requesting that Defendants' counsel serve various discovery Plaintiff had not yet received)). Therefore, Plaintiff is capable of utilizing the discovery tools available to him through the Federal Rules of Civil Procedure to build and present his case. He also has the assistance of family members outside the prison system. Plaintiff argues that he has been unable to respond to Defendants' interrogatories and "put together discovery" because he has been repeatedly denied access to necessary records from the facility. However, Plaintiff is only required to produce documents within his possession, custody, or control when responding to discovery requests. Fed. R. Civ. P. 34(a)(1). He is not required to obtain information from third parties outside of his control – such as the prison facility. *Id.* Such information, if needed, may be sought through the issuance

7

of third party subpoenas. Fed. R. Civ. P. 45. Thus, this argument is not a basis for appointing pro bono counsel. For these reasons, the third *Tabron* factor also weighs against the appointment of pro bono counsel.

The fourth *Tabron* factor requires the Court to analyze Plaintiff's capacity to retain counsel on his or her own behalf. *Montgomery*, 294 F.3d at 499. The Court is cognizant that Plaintiff is incarcerated and therefore has extremely limited resources. It assumes Plaintiff's indigent status has not materially changed since the filing of his last IFP application. (ECF Nos. 3, 99-1 at 1-2). Thus, the Court finds that this factor weighs in favor of appointing counsel. This factor alone, however, does not justify the appointment of counsel. *See Christy v. Robinson*, 216 F. Supp. 2d 398, 410 (D.N.J. 2002).

The fifth factor requires the Court to examine the amount a case is likely to turn on credibility determinations. *Parham*, 126 F.3d at 460. "[P]ro bono counsel may be warranted when witness credibility is a key issue and when the factfinder must decide between conflicting testimony." *Davis v. Burke*, No. 19-CV-10620 (JMV) (JBC), 2022 WL 970220, at *3 (D.N.J. Mar. 30, 2022) (citing *Tabron*, 6 F.3d at 156). The Third Circuit has cautioned, however, that "[w]hile the case ultimately may have relied upon credibility, it is difficult to imagine a case that does not." *Parham*, 126 F.3d at 460. Thus, when considering this factor, courts should determine whether the case was solely a "swearing contest" between witnesses. *Id.*; *accord Montgomery*, 294 F.3d at 505.

Here, Plaintiff claims that this case will raise issues of conflicting witness testimony that will "require a litigator to elicit relevant testimony and cross-examine adverse witnesses to aid in the search for the truth." (ECF No. 194 at 11). Plaintiff also argues that, because many of the witnesses he intends to call are current and former prisoners, credibility will be a major issue as the fact finder may be less likely to trust them. (*Id.*). He also states that he "has not been in contact

8

with potential witnesses and has no knowledge of their whereabouts." (*Id.*). Plaintiff explains that an attorney would be helpful in locating and interviewing the witnesses to secure testimony to prove his claim. (*Id.*). These arguments support Plaintiff's assertion that this case will involve some credibility determinations. However, the Court cannot conclude that the outcome of this case will depend solely on a swearing contest among witnesses. Indeed, it appears that Plaintiff intends to introduce video footage and other documentary evidence to prove his claims. (*Id.*; ECF No. 99-1 at 3-4). Thus, the Court holds that this factor is neutral.

In assessing the sixth and final *Tabron* factors, the Court considers whether Plaintiff's case will require testimony from expert witnesses. *Montgomery*, 294 F.3d at 499. To prevail on § 1983 medical-needs claims, convicted prisoners may require the testimony of a medical expert. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 536 (3d Cir. 2017) ("[M]edical expert testimony may be necessary to establish deliberate indifference in an adequacy of care claim where, as laymen, the jury would not be in a position to determine that the particular treatment or diagnosis fell below a professional standard of care."). While Plaintiff's operative complaint includes claims concerning a lack of proper medical care, Plaintiff fails to explain whether expert testimony would be necessary for these claims. Instead, Plaintiff claims that his case will require expert testimony at trial related to his contract claims and his exposure related claims. (ECF No. 194 at 10). However, the contract and exposure related claims are not included in the operative complaint so they cannot support Plaintiff's instant motion. Accordingly, the sixth factor weighs against the appointment of counsel.

The Court finds that on balance, the *Tabron* factors weigh against the appointment of pro bono counsel. Four of the six factors weigh against the appointment of pro bono counsel and one factor is neutral. Indeed, the only factor that supports the appointment of pro bono counsel is

9

Plaintiff's indigent status but, as explained above, this one factor alone is not dispositive. Therefore, even assuming Plaintiff's asserted claims have some merit, there is still no basis for appointing pro bono counsel

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for the appointment of pro bono counsel is **DENIED** without prejudice. The Court shall issue an accompanying Order.

    */s/ Stacey D. Adams*
Hon. Stacey D. Adams, U.S.M.J.